IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DERICK NEWTON,

               Plaintiff,

      v.                                    Civil Action No.
                                           03-CV-991 (LEK/DEP)

REVEREND HAWK, D. LACLAIR,
 Deputy Superintendent,

               Defendants.

_____

APPEARANCES:                  OF COUNSEL:

FOR PLAINTIFF:

DERICK NEWTON, *Pro Se*

FOR DEFENDANTS:

HON. ELIOT SPITZER          DEBORAH A. FERRO, ESQ.
Office of the Attorney General    Assistant Attorney General
State of New York
Office of the Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Derick Newton, a former New York state prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this civil rights action pursuant to 42 U.S.C. § 1983, alleging violation of his constitutional rights by employees of the New York State Department of Correctional Services ("DOCS").[1]  In his complaint, plaintiff seeks to hold the defendants accountable for their refusal to allow him to visit his dying father, although he does not specifically identify the source of the federal right which he seeks to vindicate.

Currently pending before the court is a motion by the defendants seeking the entry of summary judgment dismissing plaintiff's complaint both for failure to state a meritorious claim and, in the case of defendant Hawk, on the basis of the lack of any showing of his personal involvement in the violation alleged.[2]  Because the record now before the court fails to disclose the existence of any genuine, triable issue of material fact and establishes, as a matter of law, that plaintiff has suffered no cognizable

---

[1]      Plaintiff was released from custody of the DOCS on August 9, 2004. LaClair Aff. (Dkt. No. 17) ¶ 3.

[2]      In their motion defendants also claim entitlement to qualified immunity. In light of my recommendation on the merits, I have not separately addressed the qualified immunity issue.  *Saucier v. Katz*, 533 U.S. 194, 121, S. Ct. 2151 (2001).

2

constitutional deprivation, I recommend that defendants' motion be granted.

I.    <u>BACKGROUND</u>

Newton was received into custody of the DOCS on September 19, 2002 as a repeat felony offender.  Defendants' Rule 7.1(a)(3) Statement (Dkt. No. 17) ¶¶ 1, 2, Exhs. D-3, D-4.[3]  At the times relevant to his complaint, plaintiff was confined within the special housing unit ("SHU") of the Upstate Correctional Facility, located in Malone, New York.  *Id.* ¶ 3.

On March 31, 2003 defendant Hawk, a cleric employed at Upstate, received a telephone call from plaintiff's stepmother, reporting that Newton's father was ill and had been hospitalized.  Defendants' Rule 7.1(a)(3) Statement (Dkt. No. 17) ¶ 4.  Within an hour of receiving the call, defendant Hawk confirmed that the plaintiff's father was indeed ill, and was being treated at Calvary Hospital, located in the Bronx, New York.  Newton's family did not provide requested verification of his father's health status, however, until April 25, 2003, when a letter providing that information was faxed to the prison facility.  *Id.* ¶ 5.

---

[3]    As will be seen, by virtue of his failure to properly oppose defendants' motion, plaintiff is considered to have admitted the facts set forth in defendants' Local Rule 7.1(a)(3) Statement.  *See* pp. 7-9, *post.*

Consistent with DOCS policies and applicable provisions of the New York Correction Law, on April 28, 2003 Newton was asked by defendant Hawk whether he was requesting a death bed visit, or instead permission to attend his father's funeral.  Defendants' Rule 7.1(a)(3) Statement (Dkt. No. 17) ¶ 6.  Plaintiff responded by expressing his preference for a death bed visit, and defendant Hawk accordingly submitted a request on Newton's behalf for permission to visit his father at the hospital where he was receiving treatment.  *Id.* ¶ 7.

Plaintiff's request for permission to visit his father was referred to defendant Darwin LaClair, the Deputy Superintendent for Security at Upstate, whose responsibility it was to evaluate and approve or deny such requests.  Defendants' Rule 7.1(a)(3) Statement (Dkt. No. 17) ¶ 10.  On April 28, 2003 defendant LaClair denied plaintiff's request for a bedside visit with his father, based upon security concerns.  *Id.* ¶¶ 12, 20, 22.  Defendant LaClair's decision was informed by several factors deemed by him to be relevant to the exercise of his discretion, including plaintiff's confinement within the facility's SHU and the nature of the disciplinary offenses from which it resulted, as well as the fact that it followed closely

after Newton's release from a prior keeplock confinement.[4]  Defendants'
Rule 7.1(a)(3) Statement (Dkt. No. 17) ¶ 13.  In denying the request,
defendant LaClair also took into account plaintiff's history of recidivism,
his extensive disciplinary history over a relatively short period of time, and
the fact that he was a repeat felony offender.  *Id.* ¶¶ 13, 14.  After
weighing the relative security concerns posed by granting the request for
a bedside visit, as opposed to permitting plaintiff's attendance at the
anticipated funeral, defendant LaClair determined that a funeral visit would
be preferable, citing concerns regarding exposure of staff, patients and
visitors at the hospital to plaintiff's presence.  *Id.* ¶¶ 20-22.

On May 6, 2003, based upon a call received earlier that day by
prison officials, plaintiff was informed that his father had died two days
earlier.  Defendants' Rule 7.1(a)(3) Statement (Dkt. No. 17) ¶ 21;
Amended Complaint (Dkt. No. 5) ¶ 6.  Plaintiff subsequently requested
and was granted permission to attend his father's funeral, based upon
defendant LaClair's determination that the funeral home setting for such a
visit could be adequately secured in anticipation of such a visit.

_____

[4]        Plaintiff's disciplinary SHU confinement at the time of his request resulted
from his creation of a disturbance, assault and harassment of staff, refusal to obey a
direct order, and violation of search/frisk procedures.  Defendants' Rule 7.1(a)(3)
Statement (Dkt. No. 17) ¶¶ 17, 18, Exh. D-3.

Defendants' Rule 7.1(a)(3) Statement (Dkt. No. 17) ¶¶ 22, 23.  On May 8, 2003 plaintiff was escorted, in custody and accompanied by DOCS corrections workers, to Manhattan for his father's funeral.  Amended Complaint (Dkt. No. 5) ¶ 6; LaClair Aff. (Dkt. No. 17) Exh. D-5.  _____

II.    PROCEDURAL HISTORY

_____After exhausting available internal administrative remedies, plaintiff commenced this action on August 12, 2003, Dkt. No. 1, later amending his complaint as a matter of right on November 5, 2003.  Dkt. No. 5. Named as defendants in plaintiff's amended complaint are Reverend Hawk and Deputy Superintendent LaClair.  *Id.*  Plaintiff's complaint, as amended, alleges that defendants' refusal to allow him to visit his dying father was tantamount to infliction of cruel and unusual punishment, and seeks recovery of $1 million in damages of an unspecified nature.

Following joinder of issue by the filing of an answer on December 15, 2003, Dkt. No. 12, defendants moved on December 30, 2004 for the entry of summary judgment dismissing plaintiff's complaint in its entirety. Dkt. No. 17.  In their motion, defendants argue that 1) inasmuch as inmates enjoy no constitutional right of release to participate in death bed visits or attend funerals, plaintiff's claim is legally deficient on the merits;

2) defendant Hawk is entitled to dismissal of plaintiff's claims against him, based upon his lack of personal involvement in the constitutional violation alleged; 3) plaintiff's compensatory damage claim is subject to dismissal, based upon his failure to allege and demonstrate the existence of a physical injury suffered as a result of the violation alleged; and 4) in any event, the defendants are entitled to qualified immunity.  Despite service upon him of the motion for summary judgment, which includes a notice containing the requisite language advising him of the potential consequences stemming from a failure to properly oppose the motion, *see generally Forsyth v. Federation Employment & Guidance Serv.*, No. 03-7348, 2005 WL 1324967 (2d Cir. June 6, 2005), plaintiff has submitted no opposition papers.

Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

   A.   Plaintiff's Failure to Oppose Defendants' Motion

The first issue to be addressed is the legal significance, if any, of

7

plaintiff's failure to oppose defendants' summary judgment motion, and specifically whether that failure automatically entitles defendants to dismissal based upon their motion.

This court's rules provide that

> [w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.

N.D.N.Y.L.R.7.1(b)(3). While recognizing that *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions *(see Jemzura v. Public Service Comm'n*, 961 F. Supp. 406, 415 (N.D.N.Y. 1997) (McAvoy, C.J.)), courts in this district have found it appropriate to grant a dispositive motion pursuant to Local Rule 7.1(b)(3) based upon a *pro se* plaintiff's failure to respond. *Robinson v. Delgado*, 96-CV-169, 1998 WL 278264, at *2 (N.D.N.Y. May 22, 1998) (Pooler, J. & Hurd, M.J.); *Cotto v. Senkowski*, 95-CV-1733, 1997 WL 665551, at *1 (N.D.N.Y. Oct. 23, 1997) (Pooler, J. & Hurd, M.J.); *Wilmer v. Torian*, 980 F.Supp. 106, 106-07 (N.D.N.Y. 1997) (Pooler, J. & Hurd, M.J.). As can be seen by the face of Local Rule 7.1(b)(3), however, before summary judgment can be

granted – even in the absence of opposition – the court must review the motion to determine whether it is facially meritorious.  *See Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 231-32 (N.D.N.Y. 2000) (Scullin, C.J.); *Leach v. Dufrain*, 103 F. Supp.2d 542, 545-46 (N.D.N.Y. 2000) (Kahn, J.).

While a plaintiff's failure to properly oppose a defendant's motion does not assure that the motion, however lacking in merit, will be granted, that failure is not without consequences.  By opting not to submit papers in opposition to their motion, plaintiff has left the facts set forth in defendants' Local Rule 7.1(a)(3) Statement unchallenged.  Courts in this district have not hesitated to enforce Local Rule 7.1(a)(3) and its predecessor, Local Rule 7.1(f), by deeming facts set forth in a statement of material facts not in dispute to have been admitted based upon an opposing party's failure to properly respond to that statement.[5]  *See*, *e.g.*, *Elgamil v. Syracuse Univ.*, No. 99-CV-611, 2000 WL 1264122, at *1 (Aug. 22, 2000) (McCurn, S.J.) (listing cases); *see also Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing district

---

[5]      According to Local Rule 7.1(a)(3), "any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."  *See* N.D.N.Y.L.R. 7.1(a)(3).

courts' discretion to adopt local rules like 7.1(a)(3)).  I recommend that the court follow this well-established practice and, notwithstanding plaintiff's *pro se* status, accept defendants' assertion of facts as set forth in their Local Rule 7.1(a)(3) Statement as uncontroverted, in light of plaintiff's failure to respond to that statement, when reviewing defendants' motion for facial sufficiency.

      B.   <u>Summary Judgment</u>

      Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Insurance Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).

      When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact

to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n. 4; *Security Insurance*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.[6] Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be

---

[6]     A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than merely "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

11

but one reasonable conclusion as to the verdict.").

    C.    <u>Emotional Distress Claim</u>

In their motion, defendants argue that plaintiff's claim for

compensatory damages is subject to dismissal, since it seeks recovery of

damages for emotional distress without pleading the existence of any

physical injury resulting from the constitutional violation at issue.

Section 1997e(e), a provision added by the Prison Litigation Reform

Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996),

provides in relevant part that

> [n]o Federal civil action may be brought by a
> prisoner confined in a jail, prison, or other
> correctional facility, for mental or emotional injury
> suffered while in custody without a prior showing of
> physical injury.

42 U.S.C. § 1997e(e).  Included within the purview of section 1997e(e) are

alleged constitutional violations of the nature now asserted by the plaintiff.

*Thompson v. Carter*, 284 F.3d 411, 417-18 (2d Cir. 2002); *Petty v. Goord*,

No. 00 Civ.803, 2002 WL 31458240, at *8-*9 (S.D.N.Y. Nov. 4, 2002).

In this instance, plaintiff's complaint requests an award of damages

in a significant amount for injuries suffered as the result of defendants'

actions.  By operation of section 1997e(e), such relief is unavailable in a

case such as this, absent a showing of physical injury.  Based upon

plaintiff's failure to plead and adduce evidence of such a physical injury

stemming from defendants' actions, his compensatory damage claim is

legally deficient.[7]

D.     Merits Of Plaintiff's Claims

42 U.S.C. § 1983 empowers a court to grant relief when federally

protected rights, including those under the Constitution, have been

violated under color of state law.  42 U.S.C. § 1983; *City of Oklahoma City*

*v. Tuttle*, 471 U.S. 808, 816, 105 S. Ct. 2427, 2432 (1985) (quoting

section 1983).  Section 1983 does not create or establish substantive

rights, however; instead, that section merely provides a vehicle for

enforcement of federal statutory and constitutional rights.  *Id.*

Plaintiff's complaint does not identify the specific constitutional or

federal statutory provision which forms the basis for his section 1983

claim.  His use, however, of the terms "cruel and unusual punishment" and

"deliberate indifference" in describing his claims suggests their

dependency upon the Eighth Amendment's prohibition against cruel and

---

[7]       Were the plaintiff able to establish a constitutional violation, he could
potentially be entitled to recover nominal and/or punitive damages, notwithstanding
section 1997e(e) and his failure to allege and prove physical injury.

unusual punishment.[8]  Complaints in other similar cases involving funeral attendance and death bed visit requests have relied upon the Eighth Amendment, though some have also included procedural due process causes of action, arising under the Fourteenth Amendment.

1.   Eighth Amendment

The conditions associated with a prisoner's confinement are subject to the strictures of the Eighth Amendment's prohibition against cruel and unusual punishment.  *Farmer v. Brennan*, 511 U.S. 825, 832-34, 114 S. Ct. 1970, 1976-77 (1994).  The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society."  *Estelle v. Gamble*, 429 U.S. 97, 102, 104, 97 S.Ct. 285, 290, 291 (1976); *see also Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia*, *Estelle*).  While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane ones; thus the conditions of an inmate's confinement

---

[8]     That amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. XIII.

are subject to Eighth Amendment scrutiny.  *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and a subjective requirement – the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference".  *See Leach v. Dufrain*, 103 F. Supp.2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991)); *Waldo v. Goord*, No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. & Homer, M.J.); *see also, generally*, *Wilson*, 501 U.S. 294, 111 S. Ct. 2321.  Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1978; *Leach*, 103 F. Supp.2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).  In considering the types of conditions that constitute a substantial risk of harm, the court considers not only

seriousness of the potential harm and the likelihood that the harm will actually occur, but additionally evidence that unwilling exposure to that risk violates contemporary standards of decency, in that society does not choose to tolerate this risk in its prisons. *Helling v. McKinney*, 509 U.S. 25, 36, 113 S. Ct. 2475, 2482 (1993).

Not every governmental action related to the interest and well-being of a prison, however, demands Eighth Amendment scrutiny. *Sanders v. Coughlin*, No. 87 Civ. 4535, 1987 WL 26872, at *2 (S.D.N.Y. Nov 23, 1987) (citing, *inter alia*, *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084 (1986)). "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id.* (quoting *Whitley*). Conduct not intended to be punishment must consist of "more than ordinary lack of due care for the prisoner's interest or safety" to be considered cruel and unusual punishment. *Id.* Mere negligence in the treatment of a prisoner, without more, is not actionable under the Eighth Amendment. *See Farmer*, 511 U.S. at 837-38, 114 S. Ct. at 1979.

Under both the New York law and the DOCS directives which control such matters, the decision of whether to grant a death bed visit or funeral

16

attendance request is entrusted to the discretion of prison officials, whose decisions in such instances are subject to sound penalogical considerations. *See* N.Y. Correction Law § 113; N.Y. DOCS Directives 4206, 4901. The authority conferred under N.Y. Corrections Law § 113 to address plaintiff's request was delegated to defendant LaClair, based upon his position as Deputy Superintendent for Security at Upstate. The bases upon which defendant LaClair exercised his discretion to deny plaintiff's request for a bedside visit, and instead to permit him to attend his father's funeral, are set out in an affidavit submitted by him in support of defendants' summary judgment motion, and are said to have included security concerns surrounding both the hospital environment and exposure of its patrons, patients and workers to the plaintiff, with his significant criminal and disciplinary history. The record is devoid of any evidence which would suggest that the reasons articulated by defendant LaClair for his decision were pretextual, and that instead he acted out of malice or for other improper reasons with an intent to inflict emotional harm upon the plaintiff when denying Newton's bedside visit request. Absent proof of such an intent to inflict psychological distress upon him, plaintiff cannot satisfy the subjective requirement of the Eighth

Amendment's conditions of confinement test.  *Butler v. Snyder*, 106 F.

Supp.2d 589, 592 (D. Del. 2000); *see also Sanders*, 1987 WL 26872, at

*2; *Boddie v. Coughlin*, 583 F. Supp. 352, 356 (S.D.N.Y. 1984).

Accordingly, to the extent that it rests on the Eighth Amendment, plaintiff's

claim is legally deficient, and subject to dismissal.

> 2.    Fourteenth Amendment

In some cases similar to those at bar, prisoners denied permission

to attend funerals or make death bed visits have alleged that they were

deprived of a recognized and protected interest without having been

afforded procedural due process, in violation of the Fourteenth

Amendment.  While it is not readily apparent from plaintiff's complaint that

he is basing his claim on the Fourteenth Amendment, in deference to his

*pro se* status and the fact that his complaint does not particularize as to

the source of the constitutional right at stake, I will also consider whether

the facts set forth in his complaint, when liberally construed, could be

regarded as asserting such a claim.

In order to assert a claim under the due process clause of the

Fourteenth Amendment, a plaintiff must "first allege that he was deprived

of a liberty or property interest." *Verrone v. Jacobson*, No. 95 CIV. 10495,

1999 WL 163197, at *4 (S.D.N.Y. Mar. 23, 1999) (citing*, inter alia*, *Goss v. Lopez*, 419 U.S. 565, 95 S. Ct. 729 (1975)).  Only if such a protected interest is at issue is the court required to evaluate whether the denial was the result of a denial of due process.  *Id.*

One potential source of such a protected interest is the Constitution itself.  The Constitution, however, does not confer upon prison inmates a protected right to attend functions such as the funeral of a family member.  *See*, *e.g.*, *Verrone*, 1999 WL 163197, at *5; *Allen v. Senkowski*, No. CIV. 95 CV 1499, 1997 WL 570691, at *1 (N.D.N.Y. Sept. 11, 1997) (Pooler, D.J. & Scanlon, M.J.); *Green v. Coughlin*, No. 94 Civ 3356, 1995 WL 498808, at *1 (S.D.N.Y. Aug. 22, 1995).

A protected liberty or property interest sufficient to invoke the Fourteenth Amendment's procedural due process requirements may also be created by a state, by statute or otherwise.  In this instance, however, the statutory provision which allows for release of a prison inmate under circumstances such as those now presented invests with prison authorities the discretion to grant or deny a request such as that made by the plaintiff.  *See* N.Y. Correction Law § 113.[9]  The DOCS directives

---

[9]     That controlling statute provides, in relevant part, that

through which that statutory authority is exercised similarly call upon the

exercise of discretion in addressing such requests.  *See*, *e.g.*, DOCS

Directives Nos. 4206, 4901.  Since under the relevant statute and

regulatory scheme inmates do not possess an unfettered right to release

to attend such events as funerals and death bed visits, *Boddie*, 583 F.

Supp. at 356, the State has not, through those provisions, created a

protected right which can only be denied after affording procedural due

process.  *See Verrone*, 1999 WL 163197, at *4-*5.

In sum, plaintiff's failure to establish the existence of a protected

right or liberty interest, either under the Constitution or one created by the

State, proves fatal to any Fourteenth Amendment procedural due process

---

> [T]he commissioner of correctional services *may* permit any inmate confined by the department except one awaiting the sentence of death to attend the funeral of his or her father, mother, guardian or former guardian, child, brother, sister, husband, wife, grandparent, grandchild, ancestral uncle or ancestral aunt within the state, or to visit such individual during his or her illness of death be imminent . . . but the exercise of such power shall be subject to such rules and regulations as the commissioner of correctional services shall prescribe, respecting the granting of such permission, duration of absence from the institution, custody, transportation and care of the inmate, and guarding against escape.

N.Y. Correction Law § 113 (emphasis added).

claim which could be asserted based upon the circumstances now presented.

 E. <u>Personal Involvement</u>

 In their motion, defendants also challenge the sufficiency of plaintiff's allegation of defendant Hawk's personal involvement in the constitutional violations alleged.

 Personal involvement of a defendant in an alleged constitutional deprivation is a prerequisite to an award of damages under section 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

 The account of defendant Hawk's involvement set forth in plaintiff's complaint reveals no basis for finding that he had any personal involvement in the constitutional violations alleged.  While it is true that defendant Hawk informed Newton that his father was dying, assisted him

by requesting a death bed visit on his behalf, and later informed him that the request for a death bed visit had been denied, consistent with the DOCS policy authorizing such actions to be taken through a prison chaplain, *see DOCS* Directive No. 4206, § IV, he was not responsible for making the decision which led to that denial.[10]   While it is quite natural, in this and other settings, to react to unpleasant news by lashing out at the person who conveys the message, plaintiff's quarrel is with defendant LaClair who, charged with the responsibility for making a decision of whether or not to grant plaintiff's request for a death bed visit, exercised that discretion by denying the request.   Plaintiff's claims in this action against defendant Hawk are therefore subject to dismissal on the independent basis of his lack of personal involvement in the constitutional deprivations alleged.

IV.   SUMMARY AND RECOMMENDATION

Defendants have established, both by virtue of plaintiff's failure to respond to their Local Rule 7.1(a)(3) Statement and independently,

---

[10]      According to one court presented with similar circumstances, "[w]hile the chaplain can make a recommendation, the chaplain or counselor are not authorized to approve funeral visits nor . . . are they routinely apprised of the superintendent's decision." *Mercer v. Green Haven Corr. Fac.*, No. 94 CIV. 6238, 1998 WL 85734, at n.4 (S.D.N.Y. Feb. 27, 1998).

through evidence now before the court, the lack of any genuine issues of material fact which must be resolved prior to determination of the legal sufficiency of plaintiff's claims.  Plaintiff's claim that his request for permission to visit his dying father's bedside was improperly denied does not implicate a constitutional or federal statutory right and, accordingly, his section 1983 claim is subject to dismissal on this basis.  Plaintiff's claim against defendant Hawk is also subject to dismissal on the independent ground of his lack of personal involvement in the constitutional violation alleged.  Additionally, plaintiff's claim for recovery of compensatory damages for mental anguish and emotional distress is subject to dismissal based upon his failure to prove the existence of any physical injury arising from the constitutional violation alleged in his complaint.

Based upon the foregoing it is hereby

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 17) be GRANTED, and that plaintiff's complaint be DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days.  FAILURE TO SO OBJECT

TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P.  6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85

(2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

Report and Recommendation upon the parties by regular mail.

Dated:     June 27, 2005
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\ISSUES\civil rights\procedural due process\funeral\Newton.wpd